UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. S1-4:18 CR 565 CDP (JMB) |
| ) | |
| DEMETRIUS TYRESE JOHNON, ) | Defendant #1 |
| ARMOND THEOPOLISE CALVIN, and ) | Defendant #8 |
| BRUCE EDWARD JOHNSON, ) | Defendant #11 |
| ) | |
| Defendants. ) | |

**MEMORANDUM, ORDER, AND RECOMMENDATIONS OF MAGISTRATE JUDGE**[1]

Currently before the Court are several legal motions filed by three co-defendants in this matter. Defendant Demetrius Johnson has filed the following four motions: (1) motion to dismiss Count XVI (ECF No. 327); (2) motion to dismiss Count III (ECF No. 328); (3) motion for a bill of particulars regarding Count III (ECF No. 329); and (4) motion to strike surplusage in Count III (ECF No. 330). Defendants Armond Calvin and Bruce Johnson have filed separate, but similar, motions for a bill of particulars regarding Count I. (ECF Nos. 332 and 323 respectively). The government opposes each pending motion. (ECF Nos. 335, 336, 340, 342)

**RELEVANT PRODECURAL BACKGROUND**

This case involves allegations of a large-scale drug distribution conspiracy, including an alleged murder in furtherance of the conspiracy. The Superseding Indictment also alleges a variety of other crimes including money laundering and firearms offenses. The discovery is voluminous, detailed, and complex. For example, the government reported that there is wiretap

---

[1] Pretrial matters have been referred to the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(b).

evidence covering twelve different phones. In view of the number of defendants, the nature of the charges, and the complexity of the discovery, the Court designated the case as "complex" for Speedy Trial Act purposes because normal pretrial deadlines and procedures could not be followed. (ECF No. 153)

After consulting with the attorneys for all parties, the undersigned issued a scheduling order that contemplated filing pretrial motions in phases. The first phase would be legal motions that would not likely require any evidentiary hearings to resolve. (ECF No. 255) Such legal motions were to include motions challenging the sufficiency of the indictment, including motions to dismiss counts and any motions for a bill of particulars. The present Memorandum, Order, and Recommendations address the legal motions filed in this matter. Pursuant to the Court's prior scheduling order, the remaining thirteen co-defendants have waived their respective rights to bring legal challenges to the Superseding Indictment, including any requests for a bill of particulars. See Fed. R. Crim. P. 12(c)(3); United States v. Fogg, -- F.3d --, No. 18-1676 slip op. at 4 (8th Cir. Mar. 21, 2019) (quoting United States v. Paul, 885 F.3d 1099, 1104 (8th Cir. 2018)).

On February 28, 2019, the Court held oral argument on the pending legal motions. Defendant Demetrius Johnson was present with his attorneys William Margulis and Justin Gelfand. Armond Calvin was present with his attorneys Daniel Schattnik and Luke Baumstark. Bruce Johnson was present with his attorney Levell Littleton. The government was represented by AUSAs Angie Danis and Lisa Yemm.

**DISCUSSION**

I. **Demetrius Johnson's Motions**

   A. **Motion to Dismiss Count XVI** (ECF No. 327)

Demetrius Johnson moves the Court to dismiss Count XVI, which charges him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).[2] In relevant part, Count XVI alleges that Demetrius Johnson, "having been previously convicted of one or more crimes punishable by a term of imprisonment exceeding one year, did knowingly possess one or more firearms, which traveled in interstate or foreign commerce during or prior to being in the defendant's possession …." (ECF No. 179)  Demetrius Johnson challenges the sufficiency of Count XVI based on a case currently pending before the Supreme Court, United States v. Rehaif, No. 17-9560, cert. granted (Jan. 11, 2019).  Rehaif involves a question of whether the "knowing" requirement in § 922(g) applies to both the status element and the possession element, or to the possession element only.  The status element at issue in Rehaif is a person's immigration / alien status, but the outcome of Rehaif would seemingly apply to cases alleging a violation of § 922(g) based on a person's felon status.

Demetrius Johnson acknowledges that, under current Eighth Circuit precedent, Count XVI is sufficient.  Johnson contends that recent cases such as Flores-Figueroa v. United States, 556 U.S. 646 (2009)[3] and the legislative history of §§ 922(g) and 924 suggest that the most likely

---

[2] This charge was added in the Superseding Indictment as a result of circumstances allegedly involved with Demetrius Johnson's arrest on July 18, 2018.

[3] Flores-Figueroa addressed prosecutions for aggravated identity theft, pursuant to 18 U.S.C. 1028A, and held that the government must prove not only "knowing use" of a false means of identification, but also that the defendant knew that the means of identification belonged to another person.  See Flores-Figueroa, 556 U.S. at 657.

outcome in Rehaif will be to require the government to prove both knowing status and knowing possession of a firearm.

While the Supreme Court may change the law in this area, as of today, the outcome of this issue is controlled by cases such as United States v. Thomas, 615 F.3d 895, 899 (8th Cir. 2010) ("[I]t is well settled in this circuit that the government need only prove defendant's status as a convicted felon and knowing possession of the firearm"). Demetrius Johnson's motion to dismiss Count XVI should be denied.

### B. Motion to Dismiss Count III (ECF No. 328)

Count III of the Superseding Indictment charges co-defendants Demetrius Johnson, Armond Calvin, and Christopher Rhodes with capital murder during the course of the drug trafficking conspiracy. As relevant to Demetrius Johnson's motion to dismiss, Count III alleges that the three named defendants –

> … acting together and with others, known and unknown, did knowingly possess one or more firearms in furtherance of the commission of a drug trafficking crime ..., to wit conspiracy to distribute and to possess with the intent to distribute narcotics, including but not limited to fentanyl, as charged in Count One herein, and in the course of such violation, caused the death of David Bryant through the use of one or more firearms.
> In violation of Title 18, United States Code, Sections 2, 924(c)(1)(A) and 924(j)
> And in the course of this violation caused the death of a person through the use of a firearm, which killing is murder as defined in Title 18, United States Code, Section 1111, in that the defendants, acting together and with others, with malice aforethought, unlawfully killed David Bryant, by shooting him with one or more firearms, willfully, deliberately, maliciously, and with premeditation, thereby making this offense punishable under Title 18, United States Code, Section 2 and 924(j).

(ECF No. 179)

For his motion to dismiss Count III, Demetrius Johnson contends that the charge lacks the necessary specificity required by law. In particular, citing 8th Cir. Model Jury Instruction §

5.01, he argues that the government must allege the elements of aiding and abetting and has failed to do so.  Demetrius Johnson argues that this failure of specificity severely hinders his ability to prepare his defense.  He also argues that Count III fails to state an offense because it fails to state that he "*actually* possessed a firearm and that [he] *actually* used a firearm to cause the death of an individual."  (ECF No. 328 at 3)  Demetrius Johnson further takes issue with the use of the phrase "acting together with others," arguing that such a phrase is "a futile attempt to state a claim under an aiding and abetting theory of prosecution."  (Id. at 4)

The government contends that Count III satisfies the Eighth Circuit's pleading standards and characterizes Demetrius Johnson's arguments as "hyper-technical."

"An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution."  United States v. Steffan, 687 F.3d 1104, 1109 (8th Cir. 2012) (citations and quotations omitted); see also Hamling v. United States, 418 U.S. 87, 117 (1974).  Indictments are not reviewed "in a hyper technical fashion and should be 'deemed sufficient unless no reasonable construction can be said to charge the offense.'"  United States v, O'Hagan, 139 F.3d 641, 651 (8th Cir. 1998) (quoting United States v. Morris, 18 F.3d 562, 568 (8th Cir. 1994)).  An indictment is insufficient on its face if a substantive essential element is omitted.  See United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008).  "If an essential element of the charge has been omitted from the indictment, the omission is not cured by the bare citation of the charging statute."  United States v. Zangger, 848 F.2d 923, 925 (8th Cir. 1988); see also O'Hagan, 139 F.3d at 651 (quoting Zangger).

Applying these standards, the undersigned finds that Count III is legally sufficient. Demetrius Johnson does not really argue that Count III fails to set forth all of the elements of a violation of § 924(c)(1), as punishable under § 924(j). Rather, he focuses on other perceived deficiencies concerning the language used in Count III regarding aiding and abetting.

Demetrius Johnson's focus on aiding and abetting and the "acting together with others" language does not entitle him to any relief in this case. Federal criminal law places those who aid and abet the commission of an offense on equal footing with those who actually commit the offense—the principal. This is codified in 18 U.S.C. § 2(a) which provides that, "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is liable as a principal." See also United States v. Zackery, 494 F.3d 644, 648 (8th Cir. 2007). Accordingly, aiding and abetting is not a separate crime, but rather a theory of liability and is "linked to the underlying offense and shares the requisite intent of that offense." United States v. Roan Eagle, 867 F.2d 436 (8th Cir. 1989); see also United States v. Deych, 250 F. Supp.3d 362, 367 (E.D.Mo. 2017) (quoting Roan Eagle).[4] Alleging the substantive offense alone is sufficient to proceed to trial on an aiding and abetting theory; aiding and abetting need not be alleged in an indictment at all. See United States v. Garrison, 527 F.2d 998, 999 (8th Cir. 1976). Similarly, "it is not necessary that an indictment state how and in what manner the defendant aided and abetted another in the commission of an offense against the United States." Id.; see also Deych, 250 F. Supp.3d at 369 n.5 (citing Garrison).

Demetrius Johnson also argues that Count III is deficient because it fails to allege that he actually possessed and actually used a firearm to cause the death of an individual. He argues that

---

[4] Demetrius Johnson's reliance on 8th Cir. Model Jury Instruction § 5.01 is premature, but serves to demonstrate that any risk concerning the government's theory of liability can be adequately addressed at trial with appropriate jury instructions.

-6-

the government is being ambiguous and hedging rather than committing to an actual theory of prosecution.  Demetrius Johnson offers no meaningful case law in support of this aspect of his motion to dismiss Count III.  More importantly, Count III does not leave him to speculate or unable to plead an acquittal or conviction as a bar to later prosecution and it does not leave him to speculate as to the government's theory of prosecution relative to the murder of David Bryant.

Although, "[i]t is well-settled … that each count of an indictment must stand on its own, and cannot depend for its validity on the allegations of any other count not specifically incorporated," United States v. Miller, 774 F.2d 883, 885 (8th Cir. 1985) (citations and quotations omitted), Count III specifically alleges that the murder of David Bryant was committed in furtherance of the drug trafficking conspiracy charged in Count I.  A fair reading of Count III is that it does incorporate the drug trafficking conspiracy.  In fact, the government has committed in its pleadings that that the manner and means identified Count I are incorporated into Count III.  (See ECF No. 342 at 3)  As relevant to the present issues, paragraph 11 of Count I alleges as follows –

> that on or about December 3, 2016, DEMETRIUS TYRESE JOHNSON provided a Glock 27 model firearm to ARMOND THEOPOLISE CALVIN in order to kill David Bryant, who members of the conspiracy believed had stolen one of the conspiracy's drug customers.  CHRISTOPHER GLEN RHODES, JR. acted as the driver while ARMOND THEOPOLISE CALVIN shot and killed David Bryant.

(ECF No. 179)  Thus, the government has alleged a specific and detailed theory of liability that leaves little to speculate as to Demetrius Johnson's alleged role in the murder of David Bryant.

For the foregoing reasons, the undersigned finds that Count III contains a concise statement of the offense, fairly informs Demetrius Johnson of the charge against him, and allows him to plead an acquittal or conviction as a bar against future prosecution for the same offense.

Demetrius Johnson's motion to dismiss Count III should be denied.

C.   **Motion for Bill of Particulars Regarding Count III** (ECF No. 329)

Demetrius Johnson argues in the alternative that, even if the Court does not dismiss Count III, he is entitled to a bill of particulars pursuant to Fed. R. Crim. P. 7(f). He contends that the government should be required to file a bill of particulars identifying what actions he allegedly took that resulted in the death of David Bryant. Demetrius Johnson argues that as currently structured, Count III leaves him vulnerable to an unacceptable risk of surprise at trial. At oral argument on his motions, Demetrius Johnson argued that a bill of particulars is necessary to avoid the possibility of constructive amendment or variance at trial. The government counters that Count III adequately informs Demetrius Johnson of the charge against him, and notes that the government has produced voluminous discovery related to all charges.

"If a defendant believes that an indictment does not provide enough information to prepare a defense, then he or she may move for a bill of particulars." United States v. Livingstone, 576 F.3d 881, 883 (8th Cir.) (citing Fed. R. Crim. P. 7(f)), cert. denied, 558 U.S. 1099 (2009). "The purpose of a bill of particulars is to inform the defendant of the nature of a charge with sufficient precision to enable him to prepare for trial and to avoid or minimize the danger of surprise at trial." Id. It is well established that "a bill of particulars is not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present at trial." Livingstone, 576 F.3d at 883; see also United States v. Huggans, 650 F.3d 1210, 1220 (8th Cir. 2011) (quoting same), cert. denied, 565 U.S. 1202 (2012).

As noted above, Count III specifically references the conspiracy charged in Count I of the Superseding Indictment. Count I specifically and in considerable detail outlines Demetrius Johnson's role in the David Bryant murder. Demetrius Johnson is not left to guess as to his role in that murder. Further, the government has provided voluminous discovery in this matter and

has represented that it has provided discovery as to all counts.[5] The risk of surprise, variance, or constructive amendment is minimal and speculative.

Demetrius Johnson's motion for a bill of particulars regarding Count III is denied.

### D. Motion to Strike Surplusage from Count III (ECF No. 330)

Demetrius Johnson's final argument regarding Count III is that it contains surplusage. Specifically, he contends that the Court should strike the following phrases: (1) "acting together and with others, known and unknown[;]" and (2) "acting together and with others[.]" Demetrius Johnson argues that these phrases are not relevant, prejudicial to him and inherently confusing. For the most part, he re-argues his contention that these phrases are not a substitute for properly pleading an aiding and abetting theory of prosecution. At oral argument, Demetrius Johnson also emphasized that these phrases cause confusion as to the criminal intent required for a conviction.

Pursuant to Fed. R. Crim. P. 7(d), "[u]pon the defendant's motion, the court may strike surplusage from the indictment." "A motion to strike surplusage from an indictment is a matter within the court's discretion." United States v. DeRosier, 501 F.3d 888, 897 (8th Cir. 2007) (citing United States v. Figueroa, 900 F.2d 1211, 1218 (8th Cir. 1990)). The Eighth Circuit "has cautioned that such a motion 'should be granted only where it is clear that the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter." Id. (quoting Dranow v. United States, 307 F.2d 545, 558 (8th Cir. 1962)). "The mere presence of surplusage, absent prejudice, does not require striking language from the indictment." United States v. Tucker, 2007 WL 7714937 at *1 (E.D.Mo. Dec. 11, 2017) (citing United States v. Ross, 210 F.3d 916, 923 (8th Cir. 2000)).

---

[5] The extensive nature and scope of the discovery provided to date is summarized below where the undersigned addresses co-defendants Armond Calvin and Bruce Johnson's motions for a bill of particulars.

The undersigned finds that Demetrius Johnson's motion to strike surplusage should be denied for several reasons.  First, as noted above with respect to his motion to dismiss Count III, Demetrius Johnson's concerns regarding properly and adequately alleging an aiding and abetting theory of prosecution are premature; recasting those concerns in the context of a motion to strike surplusage does not alter the undersigned's conclusions.  Second, there is nothing particularly inflammatory in the government's use of terms such as "acting together and with others."  Rather, this language is innocuous.

Thus, the only remaining basis for striking the allegedly offending language would be because it somehow prejudices Demetrius Johnson.  In this regard, Demetrius Johnson argues that the language is confusing and that "a jury could believe that merely 'acting together with others' makes someone guilty of a crime that the other person commits—but that is not the law." (ECF No. 330 at 3).   As noted above, at oral argument Demetrius Johnson emphasized that the challenged language is confusing as to the criminal intent required for a conviction.  Any issues in this regard may be adequately addressed by the District Judge at trial with appropriate jury instructions.  See DeRosier, 501 F.3d at 897-88.

Demetrius Johnson's motion to strike surplusage is denied.

## II.    Motion for Bill of Particulars – Armond Calvin and Bruce Johnson
(ECF Nos. 323, 332)[6]

Co-defendants Armond Calvin and Bruce Johnson have each moved for a bill of particulars regarding Count I, pursuant to Fed. R. Crim. P. 7(f).  The differences between the two motions are not substantial.  Accordingly, the undersigned will address these motions together.

---

[6] Calvin filed a post-hearing supplement (ECF No. 353).  The supplement provides a copy of an unpublished memorandum opinion, dated March 15, 2005, from United States Magistrate Judge Clifford Shirley of the Eastern District of Tennessee.

-10-

Calvin seeks an order requiring the government to file a bill of particulars with respect to Count I of the Superseding Indictment, and specifically requests the following:

(a) When Defendant Calvin is alleged to have entered said conspiracy, and how long Defendant Calvin supposedly remained in the conspiracy;
(b) What overt acts [Calvin] supposedly performed in furtherance of the conspiracy;
(c) The exact date(s) regarding any alleged overt acts in furtherance of the conspiracy;
(d) The exact time of the alleged overt acts in furtherance of the conspiracy;
(e) The exact place where the alleged overt acts allegedly occurred; and
(f) The identity of any co-conspirator charged or uncharged, with whom Mr. Bruce Johnson `is alleged to have interacted in the actions above described.

(ECF 332 at 2-3) Similarly, Bruce Johnson moves the Court to require the government to provide the following particulars:

(a) When Mr. Bruce Johnson is alleged to have entered said conspiracy, and how long Mr. Bruce Johnson remained in the conspiracy;
(b) The exact date(s) regarding any alleged overt acts in furtherance of the conspiracy;
(c) The exact time of the alleged overt acts in furtherance of the conspiracy;
(d) The exact place where the alleged overt acts allegedly occurred; and
(e) The identity of any co-conspirator charged or uncharged, with whom Mr. Bruce Johnson is alleged to have interacted in the actions above described.

(ECF 323 at 2-3)

Armond Calvin and Bruce Johnson argue that their respective defenses are prejudiced by a lack of the requested date information.  In addition to date information, they argue that they are entitled to specific details regarding the facts of the offense charged, such as the times and places of the acts each of them purportedly committed, as well as the names of the persons with whom they allegedly conspired.  Calvin contends, for example, that such information is critical to establishing potential defenses.  Calvin also suggests that knowledge of the identities of all specific co-conspirators will enable him to challenge the admissibility of any co-conspirator statements at trial.  Calvin represents that these requests are modest because, for example, he

does not request the identification of persons who were not co-conspirators or mere witness statements. Calvin argues that, if the government cannot disclose the information requested, then the charges cannot be maintained and he will move to dismiss the charges.

At oral argument on his motion, Calvin also explained that the risk of prejudice to him is increased because Count III alleges a capital offense that hinges on Count I. Therefore, it is necessary for him to get more details because the Superseding Indictment suggests that Calvin was so deeply embedded in the conspiracy that he was willing to kill someone.

The government counters that Count I is sufficient and fully complies with the pleading requirements of Fed. R. Crim. P. 7(c)(1). The government further contends that Calvin and Bruce Johnson's arguments regarding the specific information requested are foreclosed by circuit precedent. At oral argument, the government characterized these defendants' arguments as a premature challenge to the sufficiency of the evidence. The government contends that it has provided adequate notice of its evidence to the defendants in this case. The government advised the Court, and it was not disputed, that the government has provided voluminous discovery and offered to provide a presentation to each defendant summarizing the government's case against that defendant.

As outlined above, "[i]f a defendant believes that an indictment does not provide enough information to prepare a defense, then he or she may move for a bill of particulars." Livingstone, 576 F.3d at 883. "The purpose of a bill of particulars is to inform the defendant of the nature of a charge with sufficient precision to enable him to prepare for trial and to avoid or minimize the danger of surprise at trial." Id. It is well established that "a bill of particulars is not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present at trial." Id.; see also. Huggans, 650 F.3d 1220.

-12-

Count I of the Superseding Indictment alleges an extensive drug trafficking conspiracy involving the distribution of fentanyl.  Although not required by law, Count I also identifies the manner and means of the conspiracy in fourteen separate paragraphs.  Only paragraphs 1 and 7 of the fourteen "manner and means" allegations are general in that they do not reference any specific co-conspirators by name.  Paragraph 1 outlines the general geographic focus of the drug trafficking activities by alleging that, although the conspiracy involved fentanyl distribution "in the St. Louis metropolitan area and elsewhere," the distribution was "primarily concentrated in the area in and surrounding the Clinton-Peabody public housing complex."  Paragraph 7 alleges rather unsurprisingly that the drug trafficking conspiracy generated significant proceeds.

Armond Calvin is specifically referenced in paragraphs 2, 10, and 11.  Those paragraphs provide as follows:

> 2. It is part of said drug trafficking conspiracy that DEMETRIUS TYRESE JOHNSON and others, including CHRISTOPHER GLEN RHODES, JR. and ARMOND THEOPOLISE CALVIN, often maintained control of one or more cellular telephones that were given to other members of the conspiracy in order to conduct fentanyl transactions. These cellular telephone numbers were then given to drug customers in order for the customers to contact members of the conspiracy in order to obtain fentanyl.
>
> * * *
>
> 10. It is part of said drug trafficking conspiracy that various members of the conspiracy, to include DEMETRIUS TYRESE JOHNSON, GREGORY IVY, LEBARON JACKSON, ARMOND THEOPOLISE CALVIN, CHRISTOPHER GLEN RHODES, JR., JAMES LAMONT FIELDS, MARQUISE CORTEZ BROWN, and others often possessed and/or shared firearms in order to protect their fentanyl product, the proceeds of their fentanyl sales, or to commit acts of violence against others who posed a threat to their narcotics-related business.
>
> * * *
>
> 11. It is part of said drug trafficking conspiracy that on or about December 3, 2016, DEMETRIUS TYRESE JOHNSON provided a Glock 27 model firearm to ARMOND THEOPOLISE CALVIN in order to kill David Bryant, who members of the conspiracy believed had stolen one of the conspiracy's drug customers. CHRISTOPHER GLEN RHODES, JR. acted

>   as the driver while ARMOND THEOPOLISE CALVIN shot and killed David Bryant.

(ECF No. 179)

Bruce Johnson is identified in paragraphs 4 and 6. Those paragraphs provide as follows:

4.  It is part of said drug trafficking conspiracy that DEMETRIUS TYRESE JOHNSON, CHRISTOPHER NICHOLAS PIPES, GREGORY IVY, LEBARON JACKSON, DAICHI HORIACE, JAMES LAMONT FIELDS, BRUCE EDWARD JOHNSON, and others, often maintained possession of one or more cellular telephones that were used by the group and sold fentanyl to customers who contacted said cellular telephones.

    * * *

6.  It is part of said drug trafficking conspiracy that SHARONDA DENISE MOORE, the mother of DEMETRIUS TYRESE JOHNSON and BRUCE EDWARD JOHNSON, would store narcotics, firearms, and United States currency for members of the conspiracy.

(ECF No. 179)

As presently alleged, the undersigned finds that Count I does not leave Calvin or Bruce Johnson to speculate as to their respective alleged involvement in the crime charged in Count I. In fact, Count I alleges more detail than required by law and it no doubt "apprises the defendant[s] of the time frame of the alleged drug conspiracy and the type of drugs involved." See Huggans, 650 F.3d at 1217 (regarding the sufficiency of an indictment alleging a drug trafficking conspiracy). Calvin and Bruce Johnson have not identified any authority from this Circuit to support their argument that they are entitled to more specificity regarding the dates of involvement and the other details requested.

Calvin contends that Huggans does not foreclose his position. Calvin cautions that the Court should not rely too heavily on Huggans because, in that case, the government provided all of the information that was requested thereby obviating the need for a bill of particulars.

In Huggans, the Eighth Circuit affirmed this Court's denial of a motion for a bill of particulars in drug conspiracy case. In so doing, the Eighth Circuit relied on the oft stated

principle that a motion or a bill of particulars is not a discovery device and that the government is not required to provide a detailed disclosure of its trial evidence. See 650 F.3d at 1220 (citing Livingstone, 576 at 883). As Calvin points out, the Court also noted that the government "explained its theory of the case and … had already provided [the defendant] with considerable discovery … [and] virtually every piece of information sought in [the] motions for a bill of particulars." Id.

The circumstances of the present case are not materially dissimilar from those of Huggans. In this case, Count I provides the general theory of the government's case in considerable detail and certainly meets the requirements of Fed. R. Crim. P. 7. Furthermore, the government has provided an incredible volume of discovery, as demonstrated by the government's two disclosures of arguably suppressible evidence. (ECF Nos. 213, 268) The undersigned notes that these disclosures are highly detailed and include, for example, dates and times of numerous events. Each item of evidence disclosed is also typically accompanied by an indication correlating each item with one or more specific defendants. The first disclosure (ECF No. 213), for example, references more than 100 separate items of legal process obtained during the course of the investigation, focusing primarily on electronic surveillance evidence[7] and search warrants directed at physical premises. The second disclosure (ECF No. 268) amends the prior disclosure and adds information concerning specific events relative to the investigation and charges, including controlled drug purchases and seizures of evidence such as cellphones and firearms. Although the Superseding Indictment provides a significant insight into the

---

[7] The electronic surveillance evidence appears to be extensive and covers pen register and trap-and-trace device orders, Title III wiretaps, and various forms of location monitoring warrants (e.g., phone location warrants). Each defendant in this matter necessarily has access to a vast amount of information that will reasonably enable them to identify, for example, which items of cell phone evidence might be used to prove the allegations against that defendant.

government's theory of the case, the various search warrants and wiretap applications include affidavits that no doubt provide an exceptional level of insight and detail into the government's investigation and evidence.

Furthermore, at oral argument on the motions, the government represented that it has offered to meet with each defendant and present a summary of the case.[8] Hence, each defendant has an opportunity to learn even more details regarding how the government intends to prove its case.

On the basis of the present record, at best Calvin and Bruce Johnson offer speculation that somehow they might be unfairly surprised at trial. The same record, however, leads the undersigned to conclude that such speculation is unfounded. The undersigned finds that the Superseding Indictment sufficiently advises Calvin and Bruce Johnson of the charges against them in Count I and allows them to plead an acquittal or conviction as a bar to future prosecutions for the same crimes. Likewise, the government has provided and offered to provide more than sufficient information to mitigate the risk of unfair surprise at trial. As such, Armond Calvin and Bruce Johnson's motions for a bill of particulars will be denied.

---

[8] The Court understands this to mean that the government has offered to present a "reverse proffer" of its evidence so that each defendant can understand the theory and the relative strength of the government's evidence as it relates to that defendant.

Bruce Johnson also argues that the discovery regarding him indicates he only conducted one fentanyl transaction, without the use of a cell phone, which was the result of happenstance. (See ECF No. 324 a 5-6) He believes, therefore, that the government's case against him will rest on "self-serving" co-conspirator testimony. Given the nature of the charges, it would not surprise any defendant if the government's evidence at trial included testimony from witnesses who were co-conspirators or otherwise participated in the drug trafficking activities at issue. The requirements for disclosing such witness statements are governed by the Jencks Act and the government's constitutional obligations to disclose exculpatory and impeachment material, and not by a bill of particulars.

## RECOMMENDATIONS AND ORDERS

Accordingly,

**IT IS HEREBY RECOMMENDED** that Demetrius Johnson's Motion to Dismiss Count XVI [ECF No. 327] be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Demetrius Johnson's Motion to Dismiss Count III [ECF No. 328] be **DENIED**.

**IT IS FURTHER ORDERED** that, Demetrius Johnson's Motion for a Bill of Particulars Regarding Count III [ECF No. 329] is **DENIED**.

**IT IS FURTHER ORDERED** that, Demetrius Johnson's Motion to Strike Surplusage from Count III [ECF No. 330] is **DENIED**.

**IT IS FURTHER ORDERED** that, Armond Calvin's Motion for a Bill of Particulars Regarding Count I, as supplemented [ECF No. 332, 353] is **DENIED**.

**IT IS FURTHER ORDERED** that, Bruce Johnson's Motion for a Bill of Particulars Regarding Count I [ECF No. 323] is **DENIED**.

The parties are advised that they have fourteen (14) days in which to file written objections to this Memorandum, Order, and Recommendations, unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); see also 28 U.S.C. § 636(b)(1)(A), Fed. R. Crim. P. 59(a).

Pretrial proceedings have not concluded in this matter.  Consistent with the undersigned's scheduling orders, the foregoing Memorandum, Order, and Recommendation addresses only issues relating to legal motions directed to the Superseding Indictment.  The trial of this matter

will be set by the Honorable Catherine D. Perry, Senior United States District Judge, at the conclusion of all pretrial proceedings.

                                        /s/ ***John M. Bodenhausen***
                                        UNITED STATES MAGISTRATE JUDGE

Dated this   28th   day of  March , 2019