UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. S1-4:18-CR-00565-CDP |
| | ) |
| ARMOND THEOPOLISE CALVIN, | ) |
| aka "Mon," | ) |
| | ) |
| Defendant. | |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

1. **PARTIES**:

The parties are the defendant Armond Theopolis CALVIN ("CALVIN" or defendant, herein), represented by defense counsel Luke Baumstark, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement. However, if the Court accepts the plea agreement as to the sentence or sentencing range, then the Court will be bound by said agreement pursuant to Rule 11(c)(1)(C).

2. **GUILTY PLEA**:

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), in exchange for the defendant's voluntary plea of guilty to Counts One and Three of First Superseding Indictment, the government agrees that no further federal prosecution will be brought in this District relative to

1

the defendant's conspiracy to distribute heroin, fentanyl, and other controlled substances between September of 2014 and the date of this plea, of which the Government is aware at this time.

**In addition, pursuant to Rule 11(c)(1)(C), Federal Rules of Criminal Procedure, the parties agree that the defendant's sentence should be an aggregate of 240 months (20 years) imprisonment; that is, a sentence of 120 months (10 years) on Count One and a sentence of 120 months (10 years) on Count Three, to be served consecutively.** If the Court informs the parties prior to sentencing that it will reject this agreement or sentences defendant to a sentence not in conformity with this agreement, then either party may withdraw from the plea agreement and the defendant will have an opportunity to withdraw his guilty plea pursuant to Rule 11(c)(5).

In addition, defendant acknowledges and has fully discussed with counsel that the sentence in Count Three of this case must be imposed consecutively to Count One and to any undischarged terms of incarceration he has received or may receive in any other federal or state criminal case, including in Case No. 4:17 CR 115 JAR-1.

The defendant also agrees, pursuant to the guilty plea to both counts of the First Superseding Indictment, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to:

- Approximately $3,137.00 U.S. Currency seized on July 18, 2018;
- Approximately $61,980.00 U.S. Currency seized on July 18, 2018;
- Smith and Wesson 9mm semi-automatic pistol;
- Taurus 9mm semi-automatic pistol;
- Glock model 19, 9mm semi-automatic pistol;
- Glock model 17, 9x19 caliber semi-automatic pistol;
- Glock 23C model, .40 caliber semi-automatic pistol;
- SCCY CPX-2 9mm Handgun;
- Anderson Arms AR-15 Rifle;
- Glock 27 Pistol, .40 caliber;
- Taurus G2C 9mm Pistol;
- Anderson Manufacturing AM15 Rifle;

2

- Glock 22C .40 caliber Pistol;
- Mossberg .22 Rifle;
- Savage 67H 12 gauge Shotgun;
- Intratec CAT45 .45 caliber Pistol; and a
- Glock 21 .45 caliber semi-automatic pistol.

3. **ELEMENTS**:

Count One

As to Count One of the First Superseding Indictment, the defendant admits to knowingly violating Title 21, United States Code, Sections 846 and 841, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(a) Beginning at an unknown time, but including September of 2014 and through the date of this Superseding Information, within the Eastern District of Missouri, the defendant and his co-defendants, and/or other persons known and unknown to the government, reached an agreement or came to an understanding to distribute and possess, with the intent to distribute, mixtures or substances containing detectable amounts of fentanyl; and

(b) That the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some time while it was still in effect; and

(c) That at the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement; and

(d) That the quantity of fentanyl attributable to the defendant, as part of his participation in the conspiracy, and as a result of his own conduct and the conduct of other conspirators reasonably foreseeable to him, is more than 400 grams.

3

Count Three

As to Count Three of the First Superseding Indictment, the defendant admits to knowingly violating Title 18, United States Code, Sections 924(c)(1)(A) and 924(j) and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

>(a) Defendant committed the crime of conspiracy to distribute and possess, with the intent to distribute, mixtures or substances containing detectable amounts of fentanyl as charged in Count One;
>
>(b) Defendant, acting with Demetrius Johnson and Christopher Glen Rhodes, Jr., knowingly possessed a firearm in furtherance of those crimes;
>
>(c) Defendant, acting with Demetrius Johnson and Christopher Glen Rhodes, Jr., discharged the firearm; and
>
>(d) Defendant, acting with Demetrius Johnson and Christopher Glen Rhodes, Jr., used the firearm to cause the death of David Bryant, which was murder.

4.   **FACTS**:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning at an unknown time, but up to and including May of 2016, and through the date of the First Superseding Indictment, defendant Armond Theopolis CALVIN, who also goes by the alias "Mon," entered into an agreement with his codefendants to distribute heroin and fentanyl to drug customers seeking fentanyl in the St. Louis Metropolitan area, within the Eastern District of

4

Missouri. The Drug Trafficking Organization (DTO) comprised of CALVIN and his co-defendants maintained at least one cellular telephone, which was passed around to various members of the conspiracy for the purpose of having the possessor of the phone distribute narcotics on the DTO's behalf. At certain times within the period of the conspiracy, CALVIN maintained possession of the phone and acted as a distributor, dealing fentanyl to customers who would contact the telephone number. CALVIN was principally supplied with fentanyl by Demetrius JOHNSON.

On or about December 2, 2016, JOHNSON contacted co-conspirator Christopher RHODES at phone number (314) 267-5221 while JOHNSON was incarcerated at the St. Louis City Justice Center. JOHNSON inquired about the whereabouts of the cellular telephone and/or telephones being used by the co-conspirators to distribute fentanyl and heroin. Specifically, JOHNSON asked RHODES if "you got them lines on you." RHODES informed JOHNSON that CALVIN had the phones, and RHODES proceeded to update JOHNSON on the status of the conspiracy, including that a rival drug dealer was attempting to steal customers from RHODES and other co-conspirators and that RHODES wanted to retaliate.

On or about December 3, 2016, CALVIN and his co-conspirator RHODES were distributing fentanyl, utilizing the cellular telephones that were shared by the members of the DTO. At approximately 12:19 PM, co-defendant James FIELDS placed a phone call from the St. Louis City Justice Center, where he was then-incarcerated, to the phone number (314) 366-0724, which was answered by an unindicted co-conspirator, Maurice Madison, also known as "Lil Reece," who assisted members of the DTO in preparing narcotics for sale and in selling fentanyl for RHODES, as well as accompanying CALVIN to sell fentanyl. The phone call was recorded. FIELDS asked Madison who was in possession of the cellular telephones used by the DTO to sell their narcotics,

and Madison informed him that RHODES had given possession of the phones to CALVIN. FIELDS expressed concern that the drug sales were not being handled correctly, and ordered Madison to wake RHODES, saying "there's money to be made." Madison updated FIELDS that CALVIN was currently working the phones and driving an untinted Chevy Malibu (a "mali"), the same make and model of car that Madison and RHODES had been using. FIELDS then instructed Madison that Madison and RHODES were supposed to let CALVIN ride with them in their Malibu, which unlike CALVIN'S, had tinted windows. Madison also updated FIELDS that CALVIN had been selling drugs at the Jack in the Box.

On the same afternoon, December 3, 2016, CALVIN, along with Madison, drove to the Jack in the Box located at 1807 Gravois, St. Louis, MO 63104, in CALVIN's grey Chevy Malibu, so that CALVIN could sell narcotics to a customer. As they arrived on the parking lot of the Jack in the Box, CALVIN, and Madison observed a blue Dodge Avenger, which had been previously stopped near their customer's car, drive off the lot. The customer ultimately advised CALVIN that the blue car pulled up next to the customer's car prior to CALVIN and Madison's arrival and an individual occupying that car told the customer to buy fentanyl from him. The customer advised CALVIN that he bought $50 worth of fentanyl from the occupant of the blue car. CALVIN and Madison then went to pick up RHODES from a nearby residence, so that that he could drive in pursuit of the blue car. CALVIN, RHODES, and Madison then entered RHODES'S grey, tinted Chevy Malibu, with RHODES driving, CALVIN in the front passenger seat, and Madison in the backseat. They drove southbound on Highway 55 in search of the blue Dodge Avenger.

CALVIN, RHODES, and Madison ultimately located the blue Dodge Avenger and followed it the Phillips 66 gas station located at 4347 South Broadway, St. Louis, MO 63111.

While the blue car was stopped at this gas station, CALVIN called Demetrius JOHNSON because RHODES and CALVIN did not have a gun with them. They told JOHNSON they needed a gun to "get back some geeks," meaning that RHODES and CALVIN intended to shoot the individuals occupying the blue car, who they believed had "stolen" their drug customer. JOHNSON thereafter met RHODES, CALVIN, and Madison at the Family Dollar located at 4250 S. Broadway, St. Louis, Missouri, 63111. JOHNSON was driving a newer model black Dodge Charger, and he handed a Glock 27, .40 caliber firearm with a laser sight to CALVIN, so that CALVIN and RHODES could retaliate against the occupants of the blue Dodge Avenger for stealing their customer. JOHNSON had been released from custody the previous night, and CALVIN had briefly returned JOHNSON's Glock 27, .40 caliber firearm to him.

RHODES, CALVIN, and Madison, with RHODES driving, continued to follow the blue Dodge Avenger as it drove off the Phillips 66 lot, and this pursuit was captured on surveillance footage. At the approximate location of the Meramec Market, located at 2821 Meramec Street, St. Louis, MO 63118, near the intersection of Oregon Avenue and Meramec Street in the City of St. Louis, within the Eastern District of Missouri, CALVIN leaned out of the front passenger window and began shooting at the blue Dodge Avenger which was occupied by victim David Bryant and two other individuals. The occupants of the blue Dodge Avenger observed the laser sight from the Glock 27, .40 caliber firearm targeting them prior to the shooting. The shots fired by Armond CALVIN as RHODES pursued the blue 2013 Dodge Avenger struck David Bryant, and David Bryant died shortly after as a result of being shot. CALVIN acted with RHODES and JOHNSON in connection with CALVIN'S discharge of the firearm and murder of David Bryant.

7

As CALVIN was shooting at the blue 2013 Dodge Avenger occupied by David Bryant out of the passenger window, a witness observed a black knit hat fall off of CALVIN's head onto the pavement in the front of 4320 Oregon Avenue. The witness recovered the hat and an expert criminalist with the St. Louis Metropolitan Police Department Crime Lab was later able to confirm that DNA from swabs taken of the inside of the hat were consistent with Almond CALVIN as the major contributor.

In jail calls placed by co-defendant James FIELDS to phone number (314) 267-5221 shortly after the shooting, CALVIN and Madison detailed the homicide and updated FIELDS regarding recent events relative to the drug conspiracy. Specifically, Madison told James FIELDS that someone tried to steal a drug customer at Jack and the Box. FIELDS asked if Madison, CALVIN, and RHODES confronted the rival drug dealers, and MADISON confirmed that he, CALVIN, and RHODES did. Madison described finding the rival drug dealers and calling JOHNSON to come meet up with them because JOHNSON had gotten out of custody the night before. Madison further informed FIELDS that JOHNSON met Madison, CALVIN, and RHODES. Madison also described being in a tinted car and FIELDS asked what car the rival dealers were in. Madison informed him that "[t]hey was in a little ugh Avenger" and confirmed that the rival dealers stole $50. FIELDS then asked why Madison, RHODES, and CALVIN did not have a gun with them at the time. Madison informed him they had left a gun behind when they went to the Jack in the Box, though CALVIN had possessed "the 27 last night," in reference to the Glock .27, 40 caliber firearm belonging to JOHNSON. However, CALVIN had given "the 27" to JOHNSON upon JOHNSON's release from incarceration because JOHNSON did not have any other weapon. Madison described "the 27" as having a "beam" on it, referencing the laser sight,

8

and being "Meechie's 27" ("Meechie" being one of JOHNSON's aliases). Armond CALVIN then got on the line with FIELDS. CALVIN stated that RHODES was driving and explained that the people they chased tried to take "my 50 dollars." CALVIN told FIELDS that the "geek" (which is slang for a drug customer) gave him the number of the individual from whom the "geek" had purchased drugs instead of CALVIN. CALVIN also says that "something must have happened to [the victim]" because he (CALVIN) then used the number provided by the "geek" to call the victim's phone and no one answered. An examination of victim David Bryant's cellular phone showed three missed calls from a number known to be utilized by CALVIN called shortly after the murder at 3:48:03pm, 3:48:48pm, and 4:08:20pm.

CALVIN further informed FIELDS that the "geek" told CALVIN the people who sold drugs to him were in a "light blue Dodge Avenger," the same make and model of the vehicle occupied by David Bryant and his companions. FIELDS also instructed CALVIN to have David Bryant's cell phone number transferred to a phone operated by the DTO, so that they could sell drugs to any of Bryant's customers who might call the phone.

Approximately two and a half months later, on February 13, 2017, at approximately 5:15 PM, St. Louis Metropolitan Police Department ("SLMPD") officers observed a car matching a previously broadcasted description of a vehicle wanted in connection with criminal activity turning north onto Union from Natural Bridge Road. SLMPD used spike strips to curb the vehicle, which ultimately struck a pole in the rear of 2822 North Florissant Avenue, which is located in St. Louis City, within the Eastern District of Missouri. CALVIN and RHODES were both apprehended fleeing the white vehicle crashed near 2822 North Florissant Avenue. Along with two other

9

firearms, police recovered a Glock 27 model, .40 caliber, semi-automatic pistol bearing serial number GSZ605, loaded with eight (8) cartridges, from the ground near the rear of the vehicle.

A firearms expert with the St. Louis City Police Department later determined that the Glock 27 pistol recovered from CALVIN and RHODES'S vehicle on February 13, 2017, following the Northwoods shooting, was the firearm utilized in the shooting of David Bryant on December 3, 2016. Specifically, the firearms expert determined that five (5) cartridge casings recovered from the 4300 block of Oregon Avenue immediately after the shooting of David Bryant on December 3, 2016, had been fired from the Glock 27. Investigators later found out that JOHNSON allowed CALVIN to keep the Glock 27 following the homicide because JOHNSON did not want to be in possession of a gun associated with a homicide.

While the amount of fentanyl attributable to the defendant as a result of his participation in the drug trafficking conspiracy is not subject to precise calculation, the parties agree that the amount of fentanyl for which the defendant is accountable, including the reasonably foreseeable conduct of his co-conspirators, is more than 400 grams and less than 1.2 kilograms. Expert testimony presented at trial would establish that this amount of fentanyl is consistent with the intent to distribute the substance, as opposed to personal use.

5. **STATUTORY PENALTIES**:

Count One

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than life, a fine of not more than $10,000,000.00, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than five (5) years. The defendant also fully understands

10

that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least ten (10) years.

Count Three

The defendant fully understands that as to Count Three the maximum possible penalty provided by law for the crime to which the Defendant is pleading guilty is a term of imprisonment of not less than ten (10) years and not more than life, a fine of not more than $250,000, or both such imprisonment and a fine. The Court shall also impose a period of supervised release of not less than 3 years nor more than life.

6.   **U. S. SENTENCING GUIDELINES: 2018 MANUAL**:

The defendant understands that this offense is affected by the U. S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. To assist the Court in determining the impact of the plea agreement, the parties submit the following U.S. Sentencing Guidelines analysis:

**COUNT ONE CALCULATIONS**

    a.   **Chapter 2 Offense Conduct**:

(1) **Base Offense Level**: The parties recommend that as to Count One, the base offense level is 30 as found in U.S.S.G §2D1.1(c)(5). The parties agree that the amount of fentanyl for which the defendant is accountable, including the reasonably foreseeable conduct of his co-conspirators, is more than 400 grams and less than 1.2 kilograms.

(2) **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply:   None.

    b.   **Chapter 3 Adjustments**:

11

(1) **Acceptance of Responsibility**: The parties recommend that two (2) levels should be deducted pursuant to Section 3E1.1(a), because the defendant has clearly demonstrated acceptance of responsibility.

(2) **Other Adjustments**: The parties agree that the following additional adjustments apply: none.

c. **Other Adjustment(s)/Disputed Adjustments**: None.

d. **Estimated Total Offense Level**: The parties estimate that the Total Offense Level is 28, unless defendant is a Career Offender.

## COUNT THREE CALCULATIONS

a. **Chapter 2 Offense Conduct**:

(1) **Base Offense Level**: The parties agree that the guideline sentence is found in U.S.S.G §2K2.4(b) and the sentencing enhancement where death is caused through use of a firearm is found in U.S.S.G §2A1.1(a). U.S.S.G §2A1.1(a) provides that an offense involving first degree murder has a base offense level of 43.

(2) **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply: None.

b. **Chapter 3 Adjustments**:

(1) **Acceptance of Responsibility**: The parties recommend that two (2) levels should be deducted pursuant to Section 3E1.1(a), because the defendant has clearly demonstrated acceptance of responsibility.

(2) **Other Adjustments**: The parties agree that the following additional adjustments apply: None.

  c. **Other Adjustment(s)/Disputed Adjustments**: None.

d. **Estimated Total Offense Level**: The parties estimate that the Total Offense Level is 41.

  d. **Estimated Total Offense Level**: The parties agree that with respect to Count Three, the Total Offense Level will depend on the Base Offense Level determined pursuant to Section 2K2.1(a), along with other relevant factors stated above, unless Defendant is an Armed Career Criminal. Depending on the underlying offense and Defendant's criminal history, Defendant could be an Armed Career Criminal pursuant to Title 18, United States Code, Section 924(e) and Section 4B1.4. If the Court finds Defendant is an Armed Career Criminal, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the Defendant is or is not an Armed Career Criminal

**CALCULATIONS APPLICABLE TO ALL COUNTS**

  e. **Criminal History**: The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is available in the Pretrial Services Report.

  f. **Effect of Parties' U.S. Sentencing Guidelines Analysis**:

The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted

13

to withdraw from the plea agreement. But, if the Court accepts the plea agreement in this case, it is bound by the sentencing agreement in paragraph 2 above.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**:

   a. **Appeal**: The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

   (1) **Non-Sentencing Issues**: The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

   (2) **Sentencing Issues**: In the event the Court accepts the plea and, in sentencing the defendant follows the sentencing agreement in paragraph 2, then, as part of this agreement, the parties hereby waive all rights to appeal all sentencing issues.

   b. **Habeas Corpus**: The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

   c. **Right to Records**: The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

14

8. **OTHER:**

   a. **Disclosures Required by the United States Probation Office:**

   The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

   b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

   Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

   c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

   d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

15

e.  **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

f.  **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the Superseding Information.

g.  **Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following:

- Approximately $3,137.00 U.S. Currency seized on July 18, 2018;
- Approximately $61,980.00 U.S. Currency seized on July 18, 2018;
- Smith and Wesson 9mm semi-automatic pistol;
- Taurus 9mm semi-automatic pistol;
- Glock model 19, 9mm semi-automatic pistol;
- Glock model 17, 9x19 caliber semi-automatic pistol;
- Glock 23C model, .40 caliber semi-automatic pistol;
- SCCY CPX-2 9mm Handgun;
- Anderson Arms AR-15 Rifle;
- Glock 27 Pistol, .40 caliber;
- Taurus G2C 9mm Pistol;
- Anderson Manufacturing AM15 Rifle;
- Glock 22C .40 caliber Pistol;
- Mossberg .22 Rifle;
- Savage 67H 12 gauge Shotgun;

16

- Intratec CAT45 .45 caliber Pistol; and a
- Glock 21 .45 caliber semi-automatic pistol.

The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

9. **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the entire case against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-

17

incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges that the defendant has voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

11.  **CONSEQUENCES OF POST-PLEA MISCONDUCT**:

After pleading guilty and before sentencing, if defendant commits any crimes, violates any conditions of release, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States will be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12.  **NO RIGHT TO WITHDRAW GUILTY PLEA**:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring or as set forth in Paragraph 2 above.

10/1/20
Date

_____
LISA M. YEMM, #64601MO
ANGIE E. DANIS, #64805MO
Assistant United States Attorneys

9-26-20
Date

_____
ARMOND CALVIN
Defendant

9-25-20
Date

_____
LUKE BAUMSTARK
Attorney for Defendant

20